In the Matter of COUNTRY CLUB OF SARASOTA, LTD., Debtor.

COUNTRY CLUB OF SARASOTA, LTD., Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant.

Bankruptcy No. 81–00744.

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Oct. 23, 1981.

Weil, Gotshal & Manges, New York City, Williams, Parker, Harrison, Dietz & Getzen, Sarasota, Fla., for defendant.

M. Jay Lancer, Sarasota, Fla., Malka Isaak, Tampa, Fla., for debtors.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION ON COMPLAINT SEEKING INJUNCTIVE RELIEF

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is a complaint, filed by Country Club of Sarasota, Ltd. (Country Club), the Debtor involved in this Chapter 11 business reorganization case. Country Club seeks injunctive relief against the Defendant, Equitable Life As-

surance Society of the United States (Equitable) in order to prevent Equitable from obtaining a certificate of title to a property on which Equitable held the mortgage. In order to preserve the status quo, on October 1, 1981, this Court granted a Motion for Temporary Restraining Order and restrained the Clerk of the Circuit Court of Sarasota from issuing a certificate of title which was scheduled to be issued on October 5, 1981. The Temporary Restraining Order provided, however, that hearing shall be held, with notice, to consider whether or not a preliminary injunction should be issued or the Temporary Restraining Order should be terminated.

At the duly scheduled hearing, the Court heard argument of counsel for the respective parties, considered the record and is satisfied that Country Club is not entitled to the relief sought and the complaint for injunctive relief should be dismissed for the following reasons:

The undisputed facts as appear from the record are that on March 23, 1981, Equitable obtained a final judgment in foreclosure in the Circuit Court of Sarasota County, in the amount of $5,227,162.80 and pursuant to the foreclosure judgment, the property was scheduled to be sold May 5, 1981. The day before the scheduled sale, Country Club filed its petition for relief under Chapter 11 of the Code and the automatic stay, which immediately came into play, of course, stopped any further proceeding in the foreclosure action.

On May 18, 1981, Equitable filed a complaint and sought modification of the automatic stay in order to complete the foreclosure action. The cause was tried in due course and the Court having considered the complaint and the record as established at the final evidentiary hearing entered an order granting relief from the stay and authorized Equitable to proceed in the state court to complete the foreclosure action.

On September 22, 1981, the property was sold at public sale by the Clerk pursuant to an order of the Circuit Court of Sarasota County. Equitable was the only bidder at the sale and bid $3,660,000 for the property.

Thereafter, the Clerk informed the parties that he would issue a certificate of title to the property to Equitable on October 4, 1981. Faced with the apparent inevitable loss of the property, Country Club launched this last ditch desperate effort to prevent the loss of its sole asset and filed this complaint on October 2, 1981 or two days before D-day, i. e. October 4, 1981, when the Clerk was to issue the certificate title to Equitable. If that took place, all rights of Country Club in the subject property would have been extinguished and lost.

The present right to relief is based on the contention that Country Club obtained an agreement for sale and purchase of the subject property from Land Sites, Inc.; that the sale would allegedly produce sufficient funds to pay Equitable the value of the property, but not the amount of the final judgment, and pay off any of the parties who claim superior interest to Equitable and would pay $50,000 to the estate for the use of the name "Country Club of Sarasota". It further appears from the record, according to an affidavit filed by Bruce R. Zirinsky, counsel of record for Equitable, that a direct inquiry revealed that Country Club has no contract with Land Sites, Inc. for the purchase of the subject property and any possible sale by Country Club contains numerous contingencies too uncertain and vague.

The allegations set forth in the affidavit have not been rebutted at the final evidentiary hearing by Country Club and the fact of the matter is that Country Club has no contract with Land Sites, Inc. However, Country Club now contends that it has a new binding and valid contract with an entity known as Meredith Developments, Inc. and is willing, if given an opportunity, to post with the court, $100,000, the down payment furnished by Meredith Development toward the purchase price of the property to show the seriousness of the offer. The proposed contract calls for the purchase price of $5,100,000 which, of course, is less than the final judgment obtained by Equitable. Most importantly, one of the terms of the sale is that Equitable would receive a

promissory note and mortgage in the principal amount of $3,700,000 earning an interest of 8% per annum, the interest to be paid only quarterly, $1,800,000 to be paid within 180 days after closing and the entire remaining balance 24 months after closing. The agreement also calls for the payment of $1,300,000 to Equitable in cash at closing.

The difficulty with this proposed sale is threefold. First, the amount proposed to be paid to Equitable is less than the amount of the judgment, and second, this proposed sale is to be funded by a third party as a joint venture and there is no hard evidence before this court that this funding would, in fact, be available. Lastly and most importantly, it is clear that Country Club lost all proprietary interest in the subject property and is left with nothing but the right of redemption. Thus, it has nothing to sell except possibly, the right of redemption which, of course, requires a payment in full, in cash, of the judgment obtained by Equitable. This being the case, Country Club can no longer scale down its indebtedness due to Equitable represented by the final judgment. This being the case, it is evident that the injunctive power granted to this court by § 105 of the Code can only protect the right of redemption, the only thing which remains to be property of the estate and since there is no proof that the debtor is in a position to exercise this right of redemption, either within the period provided by state law or within a very short time fixed by this court, it is not entitled to the injunctive relief it seeks and the complaint should be dismissed.

A separate final judgment shall be entered in accordance with the foregoing.